UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTINE RIVARD, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:23-CV-10576-AK |
| NICE SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**A. KELLEY, D.J.**

Plaintiff Christine Rivard ("Plaintiff" or "Rivard") is a former sales employee at NICE Systems, Inc. ("NICE" or "Defendant"). [Dkt. 1-1 ("Compl") at ¶¶ 1-2, 3]. Rivard asserts that upon her departure from NICE, she was owed almost $60,000 in commissions which were not paid to her on her last day. [Dkt. 1 at ¶ 3]. She argues that NICE's failure to pay that commission represents a violation of Mass. Gen. Laws ch. 149 ("Wage Act"), which mandates treble damages for a violation. [Compl. at ¶¶ 16-22]. NICE has moved to dismiss the claim, arguing that the terms of Rivard's contract mean that the outstanding commissions she seeks were not sufficiently finalized for their payment to have been required under the Wage Act. [Dkt. 6].

For the following reasons, NICE's motion to dismiss is **DENIED**.

I.      BACKGROUND

Unless otherwise noted, the following facts are presented as alleged in the complaint. [See Compl.].  Rivard began her employment with NICE on January 3, 2012, and she was promoted to Solution Sales Executive in 2019.  [Id. at ¶¶ 3-5].  Rivard earned commissions on her sales both when her clients signed the contract and when invoices were sent.  [Id. at ¶ 6].  The details describing how she earned those commissions were set forth in NICE's "2021 Sales Incentive Plan – Enterprise and Public Safety" ("Incentive Plan" or "Plan").  [Id. at ¶ 5].

The Plan, which is incorporated by reference into the complaint, includes some of the following provisions.  The Plan specifies that Rivard earned commissions, known as "Incentives," which it defines as "a right to payment based on Quota Retirement[1] that results from an Order that has been Booked by a Company."  [Dkt. 7-1 at 5].  Her goal sheet and Exhibit A of the Plan outlines the benchmarks Rivard needed to reach to meet the "Quota Retirement" and the milestones needed for Incentives to be earned.  [Id. at 22-25].  For instance, when it came to products, Plaintiff earned 50% of the total calculated Incentive upon Booking and 50% upon Invoicing.  [Id. at 22].

The Plan also describes "Unearned Incentives" as a separate category.  [Id. at 10].  When "Incentives are earned based on Booking, Invoicing and/or any other criteria … the Employer initially calculates the entire Incentive at the time of Booking."  [Id.].  The Unearned Incentive is the portion of the commission that is not considered earned until certain criteria, such as booking or invoicing, have occurred.  [Id.].

---

[1] Quota Retirement means the credits a participant receives against her Quota.  [Dkt. 7-1 at 8].

The Plan states that a "Participant continues to have responsibilities after a Purchase Order is accepted by a Company to assist in resolving Customer issues until payment is made by the Customer and a full transition is made to that Company's Services Organization." [Id. at 1-2]. It also specifies that Unearned Incentives can be reduced, in whole or in part, by "De-Booking"[2] if the booking is received before the entire Incentive is earned. When this occurs, the "Unearned Incentive related to the amount of the De-Booking shall be applied to reduce the Unearned Incentive associated with the Booking." [Id. at 12]. The Plan specifies different ways in which Incentives are reduced depending on when the De-Booking occurred. [Id.]. For instance, a salesperson may receive less pay from future Incentives until the loss due to the De-Booking has been offset. [Id.]. When a salesperson is overpaid, the Plan outlines the process for the company to be paid back. [Id. at 13-15, 31-34].

The Plan further adds that participants, like Rivard, who resign "will be paid at the time provided in the Plan or at the time required by applicable laws, if such laws require earlier payment." [Id. at 18]. An employee's participation in the Incentive Plan ends as of the last day of their employment, after which "Incentives … will be calculated based upon Bookings and Invoicing's through the last day of Plan participation. For the avoidance of doubt, Participants shall not earn any Incentives or Bonuses following termination from an Employer." [Id.]. Those

---

[2] A De-Booking is a "reversal of a Booking, in whole or part." [Dkt. 7-1 at 5]. The Employer reserves the right to "De-Book a Booking" which can subject an Unearned Incentive to a reduction "when a De-Booking, in whole or part, occurs before the entire Incentive related to a Booking has been earned. The Unearned Incentive related to the amount of the De-Booking shall be applied to reduce the Unearned Incentive associated with the Booking." [Id. at 12].

Incentives calculated after the last day of plan participation are still "subject to offset for De-Bookings, Uncollectible Determinations, and Revenue Recognition reversals … ." [Id.].

According to Rivard, after she closed a contract with a client, "she had no more obligations" except to "wait until the time allotted in the contract came and then she would be paid the rest of her commissions." [Compl. at ¶ 7]. Rivard left NICE on or around December 30, 2021. [Id. at ¶ 8]. Prior to her leaving, she asked how her remaining commissions would be paid. [Id. at ¶ 9]. During her exit interview, Roshini Ray, an employee in Human Resources, informed Rivard that she would be paid all of the commissions she had earned through her last day, as is required by law. [Id. at ¶ 10]. Rivard alleges that she is owed commissions that are worth nearly $60,000 from sales that she completed and was waiting for NICE to send the invoice to be paid. [Id. at ¶¶ 11-12]. After Rivard left the company, NICE did continue to issue Rivard some checks pursuant to other payments that they had promised her, including sending a check in February 2022 for commissions earned in 2020 and 2021. [Id. at ¶ 14]. Rivard alleges though that NICE has still not paid her for the vast majority of sales that she closed prior to her departure. [Id. at ¶ 15].

**II.    LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be

4

accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

On a 12(b)(6) motion, a district court may consider the "facts and documents that are part of or incorporated into the complaint" and also "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. When the complaint relies upon a document, whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citations omitted).

## III.  DISCUSSION

Rivard asserts that NICE violated the Wage Act by failing to pay approximately $60,000 for commissions that she was owed. [Compl. at ¶¶ 17-18]. She claims that those commissions were due and payable, that they were calculable, that there were no unsatisfied contingencies that she had to complete, and that she was simply waiting for the invoices to be sent. [Id. at ¶¶ 19-21]. NICE argues that the terms of the Incentive Plan conflict with Rivard's allegations and that Rivard fails to state a claim under the Wage Act because the Incentives she refers to are not definitely determined or due and payable.[3] [Dkt. 7 at 8-14].

The purpose of the Massachusetts Wage Act is to "protect employees and their right to wages," Elec. Data Sys. Corp. v. Atty. Gen., 907 N.E.2d 635, 641 (Mass. 2009), "by requiring employers to pay employees their wages 'in a timely fashion, according to the parameters set out in the statute.'" Fine v. Guardian Life Ins. Co. of Am., 589 F. Supp. 3d 139, 150 (D. Mass. 2022) (quoting Okerman v. VA Software Corp., 871 N.E.2d 1117, 1121 (Mass. App. 2007)). To state a claim under the Wage Act, a plaintiff must allege that (1) she was an employee under the statute; (2) her form of compensation is considered a wage under the statute; and (3) the defendants violated the Wage Act by failing to pay her wages in a timely manner. Klauber v. VMWare, Inc., 599 F. Supp. 3d 34, 46 (D. Mass. 2022) (citing Stanton v. Lighthouse Fin. Servs., Inc., 621 F. Supp. 2d 5, 10 (D. Mass. 2009)). A commission is considered a wage for the

---

[3] Defendant first argues that the Incentive Plan is properly before this Court and that its express terms contradict the complaint and should trump the allegations contained therein. [Dkt. 7 at 8]. For the purposes of this motion, the Court does analyze that Incentive Plan and notes those discrepancies between Plaintiff's allegations and the Plan's terms. However, the Plan's terms and outlined obligations may be subject to different interpretations and, on the available information, its terms may still support Plaintiff's characterization of the facts. Because the arguments about the Incentive Plan's terms overlap significantly with Defendants' arguments about the Wage Act's applicability, the Court addresses Defendant's arguments about the Incentive Plan in its analysis of the Wage Act claim.

purposes of the Wage Act "when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee." Mass. Gen. Laws ch. 149, § 148; Weems v. Citigroup Inc., 900 N.E.2d 89, 92 (Mass. 2009).

The allegations in Rivard's complaint plausibly state a claim for a violation of the Wage Act because the commissions she is owed can be definitely determined and were due and payable.

### a. Definitely determined

For a commission to be "definitely determined" for the purposes of the Wage Act, it must be "arithmetically determinable." Fine v. Guardian Life Ins. Co. of Am., 589 F. Supp. 3d 139, 151 (D. Mass. 2022) (quoting McAleer v. Prudential Ins. Co., 928 F. Supp. 2d 280, 287 (D. Mass. 2013)). However, where the work to earn the commission was done prior to the plaintiff's resignation, the fact that it may take some time to make a final calculation as to the exact amount owed does not take that commission "outside the scope of the Wage Act." Israel v. Voya Institutional Plan Servs., LLC, No. 15-CV-11914-ADB, 2017 WL 1026416, at *7 (D. Mass. Mar. 16, 2017) (citing Feygina v. Hallmark Health Sys., Inc., No. MICV2011-03449, 2013 WL 3776929, at *2, *5 (Mass. Super. Jul. 12, 2013) (finding that a commission that could not be determined until employer finished collecting revenue was "arithmetically determinable"). A commission is not "arithmetically determinable" if there are benchmarks that remain outstanding that would prevent the commission's quantity from being determined. Gallant v. Bos. Exec. Search Assocs., Inc., No. CIV.A. 13-12081-FDS, 2015 WL 3654339, at *8 (D. Mass. Jun. 12, 2015).

Defendant argues that Rivard's Incentives are unable to be "definitely determined" because of the manner in which they were earned. [Dkt. 7 at 10-12]. For many of the

Incentives, such as those earned for "Products," 50% of the Incentive is earned upon booking while 50% is earned upon invoicing; this means that until that additional benchmark of invoicing is met, the Incentive for invoicing is considered an Unearned Incentive. [Id. at 11-12]. Defendant argues that since the Unearned Incentives here were subject to reduction, they cannot be "definitely determined" and therefore are not wages under the Wage Act. [Id. at 12].

While more details about the outstanding commissions and how they fit in with NICE's guarantees may change the Court's calculus down the road, Rivard has sufficiently pleaded that her commissions were definitely determinable. At this juncture, the Court must accept the truth of all of Plaintiff's well-pleaded facts and draw all reasonable inferences from those facts in her favor. Garcia-Catalan, 734 F.3d at 102. Rivard has asserted that she is owed an outstanding amount of $60,000 based on contracts where she had already closed with clients and was simply waiting for payment. [Compl. at ¶¶ 6-7, 11-12, 15]. This $60,000 is a specific, "arithmetically determinable" amount of money. Whether, as NICE alleges, the $60,000 is made up of Unearned Incentives or was subject to additional De-Booking, or whether Rivard needed to fulfill additional obligations before her commission owed could be calculated, requires a factual inquiry that the Court cannot proceed with at this stage. While the Incentive Plan and its requirements may factor into that analysis, the facts available to the Court here do not enable it to conclude that the Plan's details preclude the commission from being calculated. The Court can analyze the Plan, but the plain terms of the Plan cannot determine which commissions are at issue, where in the Plan they are regulated, and whether the commission at issue here was subject to further reductions based on the Plan's requirements.

NICE argues that the Incentives Rivard seeks cannot be definitely determined because Unearned Incentives are subject to reduction, including for De-Booking. [Dkt. 7 at 13]. To

further this point, NICE highlights the decision in Fine in which the commissions at issue were not arithmetically determinable because the amount owed would have varied significantly based on yet to be determined external factors. 589 F. Supp. 3d at 154. In Fine, the plaintiff sought commissions from insurance products he had previously sold; those commissions were calculated based on a formula determined by the number of insurance policies that were renewed and the type of products he had sold. Id. at 147. Since the percentage of renewals each year would change, the renewal commission amount would vary as well. Id. Therefore, the plaintiff's future commissions were not definitely determinable. Id. at 154.

  Defendant's reliance on Fine is misplaced because of the comparative ease in calculating the commission here. In Fine, the commission was contingent on future variables whose calculation was uncertain and may have reduced the amount plaintiff was due. See 589 F. Supp. 3d at 154. The facts alleged here describe a set amount: $60,000 in commissions for already finalized deals with no unsatisfied contingencies remaining. [Compl. at ¶¶ 11-13, 18-21]. Even if Rivard's commissions were subject to reductions due to De-Booking—and there is no indication whether they were—the Incentive Plan appears to outline the process by which reductions to Incentives due to De-Bookings would be calculated and by which NICE would address commissions that were improperly overpaid. [Dkt. 7-1 at 12-15, 18-19, 31-34]. Reductions due to De-Booking could reduce the amount owed, but given that they appear to reduce from a number that is already set, they would not necessarily prevent that initial base amount of the commission from being calculated. The decision in Fine is also distinguishable because it was made at the summary judgment stage following the development of a factual record. 589 F. Supp. 3d at 154. Deciding whether the commissions here can be arithmetically

determined, including for reasons specified in the Incentive Plan, is best determined at a similar time.

If Rivard's work was actually completed and all contingencies had been met prior to the end of her employment, then her commission would be due after it can be calculated, even if that occurs sometime after her termination. See Feygina, 2013 WL 3776929 at *2-3.

### b. Due and Payable

"Commissions are due and payable when any contingencies relating to their entitlement have occurred." Fine, 589 F. Supp. 3d at 152 (quoting McAleer, 928 F. Supp. 2d at 289) (internal quotations omitted). Ordinarily, a commission "becomes due and payable when the employee closes the sale, even if there is a delay in actual payment on the sale." Ellicott v. Am. Cap. Energy, Inc., 906 F.3d 164, 170 (1st Cir. 2018) (quoting McAleer, 928 F. Supp. 2d at 289). However, when a compensation plan, like the Incentive Plan here, sets out contingencies an employee needs to meet to earn their commission, the court applies the terms of that plan. Id. Continued employment is one such permissible contingency requirement. Fine, 589 F. Supp. 3d at 152. However, an employee may still be entitled to a commission even if it was not payable until after their termination, usually where "the employee had done the work to earn the commission before his or her employment was terminated and there were no unsatisfied contingencies that might have altered the amount of the commission or eliminated the employee's entitlement to the commission." Id. at 153; see, e.g., Israel, 2017 WL 1026416 at *7 (holding that commission was due and payable where plaintiff had done all the work to earn it

prior to termination, even though it took the employer months to make the final calculation on the commission's amount).

The Defendant claims that Rivard has already been paid for the Incentives she earned and any outstanding Incentives were Unearned Incentives which had contingencies remaining before they were owed. [Dkt. 7 at 13-14]. These contingencies included Rivard continuing her employment through the date that invoicing occurred, which did not happen as Rivard resigned before that point for the commissions at issue. [Id.]. Again, however, this characterization of the facts is disputed by Rivard, who claims that "there were no unsatisfied contingencies" that she had to complete and that she was "simply waiting for the invoices to be sent." [Compl. at ¶¶ 7, 11, 20-21]. Defendant cites the fact that the Incentive Plan at various junctures contradicts the assertions made by Rivard, including by specifying that she did have ongoing obligations to assist with customer issues until payment was made and that any Unearned Incentives were subject to partial or total reductions when De-Bookings occur. [Dkt. 7 at 9]. Be that as it may, without facts indicating the work that Rivard did on the commissions at issue, including after booking, the Incentive Plan's text is not sufficient on its own to establish that those commissions were not due and payable. For instance, the Incentive Plan states, "A Participant continues to have responsibilities after a Purchase Order is accepted by a Company to assist in resolving Customer issues until payment is made by the Customer and a full transition is made to that Company's Services Organization." [Dkt. 7-1 at 1-2]. It is unclear, though, the extent to which Rivard already fulfilled these obligations, the degree of assistance she was expected to provide,

or whether there were specific actions she failed to take to serve customers for the commissions in question.

The Incentive Plan also states that after an employee is terminated, any commissions earned will be calculated based on bookings and invoices through their last day. [Dkt. 7-1 at 18]. Incentive Plan participants cannot earn any Incentives or Bonuses after their termination. [Id.]. NICE argues that it already has paid all commissions that Rivard had earned after her last day of employment and that any other commissions, including those where Rivard was waiting for invoicing, should be considered Unearned Incentives. [Dkt. 7 at 13]. The development of the factual record is necessary to verify this claim. While Rivard does make reference to the fact that the commissions she was waiting on needed invoices to be sent—thus potentially categorizing the commissions she seeks as Unearned Incentives—the Court at this stage infers from the complaint that Rivard had completed all of her own obligations up until invoicing was finalized and was simply waiting for NICE to send the invoice for her be paid. [See Compl. at ¶¶ 12, 19-20].

Furthermore, while the Incentive Plan governs the commissions, it cannot do so in a manner that would contradict the Wage Act. Where an employee has already done the work to earn a commission prior to their resignation, as Rivard alleges she has here, the Wage Act requires the payment of that commission, even if calculating the exact amount would take some time. Israel, 2017 WL 1026416 at *7; see also Dodge v. Mevion Med. Sys., Inc., 575 F. Supp. 3d 236, 240-41 (D. Mass. 2021) (denying motion to dismiss where employee had completed all their work to earn a commission before termination and characterizing the Wage Act as inclusive of "post-termination renumeration, such as commissions, in certain circumstances"). Otherwise, employers would be encouraged "to evade the law by imposing lengthy delays on the payment of

commissions and conditioning the payments on continued employment." Israel, 2017 WL 1026416 at *7.

Defendant's arguments may succeed at summary judgment when the facts have made clear the application of the Incentive Plan to the commissions, as well as the nature of Rivard's outstanding obligations. At this stage however, Rivard has plausibly alleged that she had done all the work she was obliged to do, that the amount she is owed can be definitely determined, and that NICE's obligation to pay her had been triggered.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint [Dkt. 6] is **DENIED**.

**SO ORDERED.**

Dated: September 13, 2023                                         /s/ Angel Kelley
                                                                  Hon. Angel Kelley
                                                                  United States District Judge